THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* PEDRO FIRPI NEGRO, Defendant and Appellant.

No. CR-67-60. Decided June 6, 1968.

*Julio Suárez Garriga* for appellant. *J. F. Rodríguez Rivera, Acting Solicitor General,* and *Elpidio Arcaya, Assistant Solicitor General,* for The People.

MR. JUSTICE RAMÍREZ BAGES delivered the opinion of the Court.

Having been accused and convicted of the crime of incest, and ordered to serve from two to eight years in the penitentiary, appellant assigns on appeal that the trial court erred (1) in instructing the jury that the offense of incest does not need corroboration of the woman's testimony if she is forced to perform the sexual act, and in defining that offense as incest instead of defining it as one of rape, which induced

the jury to render a verdict of rape without corroboration; (2) in permitting the prosecuting attorney to state in his statement that "the prosecutrix was living maritally with defendant since she was 12 years old"; (3) in deciding before the jury that the prosecutrix was not a child of normal intelligence when she revealed the contrary; he also assigned, (4) that the jury erred in the weighing of the evidence.

After examining the record and considering the applicable law we conclude that neither the court nor the jury committed the errors assigned, and that the judgment of conviction should be affirmed.

The prosecutrix testified that she lived with appellant (her father) and her ten-year-old brother in a room in the community of Tras Talleres, in Santurce. Her father made her go to bed at 5:30 in the afternoon. She slept in a small bed, and her father and brother in a large one. At 8:30 in the night her father called her, ordered her brother to go to her bed, and he did so. When her brother was in her bed, he called her to go to bed with him. She did not, and then he grabbed a pick and an electric wire and hit her, he took her out of bed over her small brother, and dragged her up to his bed. The brother did not wake up. When her father had her in his bed he tied her to the back part of the bed, and then he took her clothes off, and committed the sexual act. He was "one hour, or thirty or twenty-five minutes on top of her"; she felt the penetration of her father's virile member in her vagina. She said that when her father hit her with the wire, she did not cry but marks were left on her. Her brother did not notice anything of this. She testified that blood came out of the wounds, but that she did not have any scars. She spoke loudly, and her small brother did not wake up. Her father (appellant) continued doing that since she was twelve years old till the month of February of 1966; he did the same thing to her in January. The last time was the night her half brother Hiram went to visit them at about

ten in the night. Later she went to live with her half brother and his wife in Caparra Terrace. Three weeks after she was living with them she told her brother what her father had done to her. Her brother submitted her to a medical examination. The medical examination of the prosecutrix performed on February 25, 1966 revealed that "she had excoriations in the hymen, which was not intact . .. . . She was not a virgin. . . ." The expert physician was intensely examined as to when the defloration occurred, and summarizing, he could not specify. He said that it could have occurred even ten days before he examined her, or a long time before. He found a hematoma in the right labium of the vulva, which could have occurred due to a coitus, fall or blow "or it could have been caused . . . with the fingernails or a blow with a desk." It was recent, subsequent to the defloration, of "hours or of four or five days" before the medical examination.

1. Appellant sustains in support of his first assignment that the crime of incest is one of those which requires corroboration because (a) if the prosecutrix gives her consent to the unlawful relation, she is an accomplice, and in that case her testimony must be corroborated pursuant to Rule 156 of the Rules of Criminal Procedure; or, (b) if she does not give her consent, she is not an accomplice but the lack of consent implies that she was obligated by force, violence or intimidation; in that case it involves rape, and corroboration is necessary pursuant to the provisions of Rule 154 of the Rules of Criminal Procedure.

A contention like that one was adduced in *People v. Stratton*, 75 Pac. 166 (Cal. 1904). It was decided that "The gravamen of the crime of incest, as of rape, is the unlawful carnal knowledge. In rape it is unlawful because accomplished by unlawful means. In incest it is unlawful, without regard to the means, because of consanguinity or affinity. Where both the circumstances of force and consanguinity

are present, the object of the statute being to prohibit by punishment such sexual intercourse, it is not less incest because the element of rape is added, and it is not less rape because perpetrated upon a relative. In this, as in every offense, the guilt of the defendant is measured by his own knowledge and intent, and not by the knowledge and intent of any other person." In *People* v. *Kaiser*, 51 Pac. 702 (Cal. 1897), the defendant was convicted for the offense of incest, allegedly committed on his thirteen-year-old daughter. He alleged that the offense committed was rape, since a thirteen-year-old minor cannot lawfully give her consent. It was decided that "assuming that the facts stated in the indictment in this case were sufficient to constitute the crime of rape, the daughter then being under the age of consent, still, under section 285 of the Penal Code [§ 275 of ours] they clearly constituted the crime of incest, and the defendant was, therefore, properly put upon trial for that offense." *Prosecution in Incest Cases as Accomplice or Victim,* 74 A.L.R.2d 705.

 It is not necessary to pass on the question of corroboration of the testimony of the prosecutrix, for the evidence reveals that she never gave her consent to the incestuous relation. The offense of incest is not covered by Rule 154 of the Rules of Criminal Procedure which requires the corroboration of the testimony of the aggrieved woman in the prosecution for one of the offenses to which said Rule makes reference.

2. Appellant assigns that the facts stated in the theory and presented as evidence were too remote, already prescribed, and that left defendant-appellant in a state of total defenselessness.

██ At the threshold it is necessary to establish that the theory of the case stated by the parties to the jury does not constitute any evidence of the alleged facts. It appears from the transcript of evidence that the trial judge stated that

defendant was being prosecuted for facts which occurred in January 1966, and if the prosecuting attorney did not succeed in proving those facts, he would order that a peremptory verdict of acquittal be returned.

On the other hand, it is a rule of law that facts similar to the one charged, if they are not too remote, are admissible to prove intent and purpose. The determination of whether or not the evidence is remote depends on the questions involved in the case. It is not an inflexible rule, and what is remote in one case may not be in another case.

In many jurisdictions it has been established that in trials for rape, crime against nature, or incest, committed on girls which are not old enough to give consent, or are in any other way lawfully incapacitated to give consent, evidence establishing similar acts committed by defendant on prosecutrix is admissible, if they are not too remote in time to corroborate the identity of the parties and the offense, but not to prove a different offense.

In the case at bar the evidence tends to show that appellant had the first sexual relation with the prosecutrix four years before the occurrence of which he is accused; that these acts were continuous and that they were extended up to the moment in which he is charged with them, that is, up to January 1966. Under those circumstances, the first act as well as the subsequent ones are proximate. In *State* v. *Browder*, 112 S.E.2d 728 (N.C. 1960) (rape), the State was permitted to present evidence of similar acts with the same girl which occurred six years before.

Appellant adduces that the prosecuting attorney could allege in his information similar facts which occurred three years before and he did not do so, however he presented evidence of facts which are already prescribed. The purpose of that evidence was not to achieve a conviction for prescribed facts; conviction for those facts was not requested either.

The testimony was admissible because the various acts were so related among themselves that the first acts tended to prove the offense charged. *People* v. *Turner*, 102 N.E. 1036 (Ill. 1913) (incest). *Admissibility in Prosecution for Several Offenses, Evidence of Other Similar Offense*, 167 A.L.R. 565.

The instructions to the jury were clear as to the fact that appellant was not being prosecuted for facts previous to the time in which the information charged him with the offense, but they had to decide whether on the month of January 1966 it was established effectively and beyond a reasonable doubt that appellant had sexual relations with his daughter. The error assigned was not committed.

3. The trial judge had to intervene in this case in the following manner:

"Q. He has already taken your clothes off; you are tied to his bed with your hands up, it is dark but you can see a bit of light through the slit which enabled you to see the pick; what did he do to you then, before you?

A. He got on top of me.

Q. Naked?

A. Yes, sir.

Q. Did you see his penis . . . as you said you saw it?

A. . . .

Q. Why do you think before answering that question?

PROSECUTING ATTORNEY:

That is nothing bad.

MR. SUÁREZ:

It is very bad.

JUDGE:

The objection of the Prosecuting Attorney is sustained.

PROSECUTING ATTORNEY:

She has a right to think.

MR. SUÁREZ:

I have a right to ask why she thinks.

JUDGE:

She has already been asked, she has a right to think, particularly when the court wants to state that the girl, in spite

of the fact that she is sixteen years old and is in the seventh grade, seems to be of a mentality ... The court is observing the witness, and she is not a girl of normal intelligence for her age, that is why the court must permit the girl to think. The prosecuting attorney's objection is sustained."

Appellant sustains that this comment made by the trial judge constituted an error because the evidence revealed that the girl is of normal intelligence.

█ It seems to us perfectly natural that the girl would resist or think before describing in detail the criminal act with which her father is charged, particularly if one considers that the defendant was her father, and that she was testifying in his presence.

We do not believe that the statement of the judge, that the girl was not of normal intelligence for her age, constituted a prejudicial error. *People* v. *Pabón*, 86 P.R.R. 526–528 (1962).

█ 4. We now come to the basic question raised by appellant in relation to the weighing of the evidence. He sustains that the latter reveals not only that (a) the defloration of prosecutrix was recent, of days, implying that it occurred after prosecutrix left the room in which she lived with her father (appellant) and her younger brother, and therefore it could not have been the father who deflorated her, but also that (b) appellant, who was 85 years old, had been impotent for the last four years, and even though he could have achieved an erection he could not maintain a sexual relation. Although these statements find support in certain isolated statements made by the two expert physicians who testified, it is not less certain that they were not fully established so that the jury who heard all of the evidence had justification in the evidence to reach a different and contrary conclusion to each one of the statements in issue. There appearing sufficient grounds in the evidence to support the incriminating conclusion, reached by the jury in this case, we must not

disturb the weighing of the evidence made by the jury. A brief analysis of the relevant evidence gives us the reason. Let us see.

Under paragraph 3 of this opinion, we summarized the testimony of the prosecutrix and of the physician who examined her.

As to the possible impotence of appellant, the physician who examined him, appointed by the court at appellant's request, testified that he found that his "testicles were atrophic to a certain degree, the spermatic cords were normal . . . he revealed an enlarged prostate . . . about three or four times over the normal." When he was asked to give his opinion on appellant's sexual potency, he answered "neither I nor any one can answer that . . . I doubt that this man can have an erection." The physician continues testifying that:

"This is a completely subjective matter; there are persons that at a certain age are impotent and others are not; however, on the basis not only of my own experience, but on the experience of other persons acquainted with this matter, my experience is that more than 90 percent of persons over 75 years old, have a sporadic erection, if any, they are not repeated or maintained erections, in other words they can have a moment of erection but there is not enough blood flow towards the penis to maintain the effectivity, that is, the erection is not of a sufficient duration to have sexual relations. However, there have been cases in which 75 year old persons have had children; however, these are categorically isolated cases, they are cases which have appeared in literature but nobody can assure that these children have been produced by these persons; at this age almost everybody is nearly impotent."

He added that people who suffer from the prostate (in this case prostatic hypertrophy) "have much greater difficulty in having an erection because of the fact that the gland is not functioning, and it is one of the urogenital glands." He testified that he believed it impossible that appellant

could "sustain a carnal act prolonged for one hour"; that he probably could not have an erection to tear the hymen at this time or four years ago, but he could not assure that. When examined by the prosecuting attorney, he testified that there are persons who reach a certain age and do not have the sexual impulse, but there are others who reach that age and have it; that the maximum age at which a man can procreate varies between the age of 65 and 75 years; that he could not say whether appellant "was lacking erection at the time of the examination," and that he had not said that appellant could not have had an erection four years ago; he explained that he had read about persons who have had children at the age of 85; that it so appears in literature; he cannot affirm it but it is accepted. When examined by the defense he testified that in his opinion, he believes that a person of the conditions revealed by the medical examination he practiced on appellant "could not have the energy to achieve a complete coitus"; that this was a personal and professional opinion; that he could not assure that appellant "had effectivity, that is, erection at the time of the examination or four years ago."

The foregoing testimony of the urologist who examined appellant reveals that it was not possible for the expert to give a categorical opinion on the sexual potency of appellant. As he stated, the circumstances on this matter vary much from person to person, for he agreed that "the sexual aspect has a lot to do with the mental aspect apart from the biological." Summarizing, although the expert was inclined to believe that appellant was impotent for the last four years, he did not state a categorical opinion to that effect. Therefore, the verdict of guilty returned by the jury did not lack grounds in this evidence.

The judgment rendered in this case by the Superior Court, San Juan Part, on September 22, 1966 will be affirmed.

Mr. Chief Justice Negrón Fernández did not participate herein. Mr. Justice Santana Becerra delivered a concurring opinion in which Mr. Justice Blanco Lugo concurs. Mr. Justice Dávila dissented.

—O—

MR. JUSTICE SANTANA BECERRA, concurring.

San Juan, Puerto Rico, June 6, 1968

In concurring in the decision of this case, I do not voice any opinion now as to whether or not, in incest, the corroboration of the woman's testimony is necessary when the latter is able to give her consent.

Mr. Justice Blanco Lugo concurs in this vote.